**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Johnnie HUDSON and Michael Dean Johnson, Defendants-Appellants.**

**No. 78-5573.**

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1979.

Rehearing and Rehearing En Banc Denied Oct. 15, 1979.

Marvin O. Teague, Houston, Tex., for Hudson.

Roy Beene, Houston, Tex., for Johnson.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., Richard P. Mesa, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before WISDOM, CLARK and GEE, Circuit Judges.

PER CURIAM:

Johnnie Hudson and Michael Dean Johnson were convicted after trial to the court of conspiring to possess marijuana with intent to distribute, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846, and with knowingly and intentionally possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Both defendants appeal their convictions, raising the sole contention that the trial court erred in denying their motion to suppress 178 pounds of marijuana discovered in the search of a motor home in the Big Bend National Park.

On the evening of April 1, 1978, United States Customs Officer Wayne Winn, Jr., was conducting routine surveillance from a high point overlooking a campground on the Rio Grande River in the Castillon section of Big Bend National Park, located on the Texas-Mexico border. At approximately 11:00 p. m. Officer Winn observed a motor home traveling southeast on Park Route 9. The motor home entered the Cottonwood Campgrounds off of Route 9, passed through the regular campground and the overflow camping area, and then entered an area not normally used for camping. The motor home parked behind some mesquite bushes approximately 75 yards from the Rio Grande River, a location which had direct access to the River. There were no other vehicles parked in the immediate vicinity of the motor home.

Shortly thereafter, a four-wheel drive pickup truck, with the body set high above the wheels, approached the campground from the same direction as the motor home. The headlights of the motor home were flicked on and off and the truck proceeded to the area where the motor home had parked and stopped nearby. After about 30 minutes, the pickup truck left the area, traveled back to Park Route 9, from which it had entered the campgrounds, and turned south, using only its parking lights. As the truck reached the road that goes from Park Route 9 to the crossing giving access to the village of Santa Elena, Mexico, it turned toward the crossing and its headlights were illuminated. Officer Winn observed the lights move toward the crossing. He temporarily lost sight of them, but a few minutes later headlights appeared on the Mexican side of the River moving toward and then around the village of Santa Elena.

After about an hour, Officer Winn observed vehicle headlights returning from the Mexican village to the River crossing, and after losing sight of the lights for a few minutes, he again observed the lights on the American side, moving from the River crossing towards the motor home. Then it appeared to Winn that the pickup backed up in close proximity of the motor home, which a dim light had illuminated throughout Winn's observation. After a few minutes, Winn again observed the headlights of the pickup as it left the area.

Officer Winn radioed fellow Customs Officer Paul Neely to intercept the pickup; Neely did, and, after the search, radioed Winn that no contraband had been found in the pickup. However, Officer Neely informed Officer Winn that the occupants of the pickup had admitted entering Mexico and that the wheels of the car were wet and there was mud on the wheels and under carriage of the truck.

Officer Neely then joined Officer Winn, who was waiting approximately 50 yards from the motor home. At this time, the motor home started moving, and both officers moved to intercept it. It was approximately 3:00 a. m.

After identifying himself as a Customs Officer, Winn asked the occupants of the motor home, defendants Johnson and Hudson, and Hudsons' common-law wife, Janie Britt, to step out of the motor home. A search of the vehicle revealed 178 pounds of marijuana concealed inside, and defendants were arrested.

After being apprised of their constitutional rights, both defendants affirmed the movements of the vehicles as observed by the agents. Hudson stated that he had gotten involved in the marijuana transaction for financial reasons and admitted that the occupants of the pickup had arranged for the delivery of the marijuana in exchange for $7,800. This was basically confirmed by Johnson, who explained that the marijuana was delivered by two Mexican males, who appeared at the motor home at the same time the pickup returned from Mexico. Both of the Mexican men were wet and one was on horseback.

Defendants urge that there was nothing in the record to show that the motor home was operated in an unlawful or illegal manner nor in any way out of the ordinary when it was driven through the regular campground, through the overflow campground and into the brushy area near the Rio Grande River. They point to the absence of signs limiting vehicle movement in that area. They further assert that no showing was made of any physical connection between the pickup truck and the mo-

tor home, especially that no person was shown to have moved from the pickup truck to the motor home or vice versa. Although the motor home's headlights blinked as the pickup truck approached, no showing was made that this could not have been due to an electrical system malfunction. They further point out that Officer Winn did not keep the pickup truck in constant surveillance and could not definitely establish that it crossed the Rio Grande River. They point out that, upon the return of the pickup truck to the motor home, no communication between the two vehicles was established, that no evidence, such as seeds, stems or the like was found in the pickup truck which would indicate that it had been used in hauling marijuana. For all of these reasons, defendants assert that the officers lacked reasonable suspicion upon which to base their search of the motor home that disclosed the marijuana.

In support of their position, defendants cite this court's opinion in *United States v. Resendez*, 578 F.2d 1041 (5th Cir. 1978). *Resendez* is distinguishable on its facts from the case at bar. The officers who searched the vehicle operated by Resendez knew only that the car had been stopped within the confines of the Big Bend National Park on the side of a regular Park road, that it had been unoccupied when they first saw it, that a second vehicle containing three persons had driven along the same Park road to the vicinity of the first car, had stopped near it for approximately five minutes, and then continued on with only two occupants. When the officers stopped the second car, the first car passed them traveling at a high rate of speed. We held that the mere presence of two vehicles on the regular roadways of a national park, which was visited by over 300,000 persons annually, did not furnish such reasonable suspicion as was necessary to support the search of the first vehicle. Mere proximity to the border inside the Park area was insufficient to furnish reasonable suspicion.

Though Officer Winn knew that the motor home had not crossed the border, he had reasonable grounds to believe that the pick-

up truck had made such a crossing, and this belief had been confirmed by Officer Neely's observations and report. As best Winn could tell from his observations, there had been an opportunity for communication between the occupants of the motor home and pickup truck both before and after the pickup truck crossed the border. The movements of the motor home in passing through the regular campground area, then passing through the overflow parking area, and then driving near the River and into a brushy area, the hour of the night, the flashing lights, the path of the pickup truck directly to the unusual vicinity of the motor home, its movement with normal driving lights off, and its return to the motor home's location after it had given every indication of having crossed into Mexico and returned, provided Winn with the strong nexus to the border which was absent in *Resendez*. They established a high degree of probability that a border crossing had taken place. When Officer Neely's information about the pickup's condition and the admission of its occupants is added to the calculus, the probability becomes a certainty. When this was so, Officer Winn had the basis for reasonable suspicion, indeed even probable cause, to believe that the occupants of the motor home had committed a violation of the customs laws. These factors furnished Officer Winn with the authority to search the motor home both under 19 U.S.C. § 482 and the fourth amendment.

The convictions appealed from are

AFFIRMED.